IN THE SUPERIOR COURT



**FILED**
November 02, 2023 01:55 PM
SX-2022-MC-00037
TAMARA CHARLES
CLERK OF THE COURT

# SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

IN RE: LIMETREE BAY COMMERCIAL LITIGATION CASES.

Master Case No. SX-2022-MC-00037
Complex Litigation Division

Cite as: 2023 VI Super 66

**Appearances:**

**CHAD C. MESSIER, ESQ.**
**STEFAN H. HERPEL, ESQ.**
Dudley Newman Feuerzeig LLP
St. Thomas, VI 00802
*For Plaintiff AltairStrickland V.I., LLC* (in Case No. SX-2021-CV-00415)

**SCOT F. MCCHAIN, ESQ.**
McChain Hamm & Associates
Christiansted, VI 00820
*For Plaintiffs Computer Solutions, Inc. d/b/a Costrack Project Controls* (in Case No. SX-2022-CV-00510), *Englobal U.S., Inc.* (in Case No. SX-2022-CV-00513), *and WESCO Distribution, Inc.* (in Case No. SX-2022-CV-00514)

**KEVIN A. RAMES, ESQ.**
Law Offices of Kevin A. Rames, P.C.
Christiansted, VI 00820
*For Plaintiffs Universal Plant Services (VI), LLC* (in Case No. SX-2021-CV-00530)

**ANDREW C. SIMPSON, ESQ.**
Andrew C. Simpson, P.C.
Christiansted, VI 000820
*For Plaintiffs InServ Field Services USVI, LLC* (in Case No. SX-2021-CV-00597), *Great Southern Technologies, LLC* (in Case No. SX-2021-CV-00598), and *Strategic Contact Resources, LLC* (in Case No. SX-2021-CV-00711). *For Defendant Port Hamilton Refining & Transportation, LLLP* (in Case Nos. SX-2022-CV-00224 and SX-2022-CV-00227) and *Proposed Substitute Defendant* (in Case Nos. SX-2022-CV-00233, SX-2022-CV-00234, SX-2022-CV-00235, SX-2022-CV-00236, SX-2022-CV-00237, SX-2022-CV-00238, SX-2022-CV-00242, SX-2022-CV-00244, and SX-2022-CV-00271). *For Defendants Sloan Schoyer* (in Case No. SX-2022-CV-00233), *Fermin Rodriguez* (in Case No. SX-2022-CV-00234), *Curtis Green* (in Case No. SX-2022-CV-00235), *Shay Glasgow* (in Case No. SX-2022-CV-00236), *Fred Flint* (in Case No. SX-2022-CV-00237), *Robert Craig* (in Case No. SX-2022-CV-00238), *Coral Megahy* (in Case No. SX-2022-CV-00242), *Neil Morgan* (in Case No. SX-2022-CV-00244), *and Donna Ashley* (in Case No. SX-2022-CV-00271)

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 2 of 26

2023 VI Super 66

**ADAM G. CHRISTIAN, ESQ.**
**SIMONE R.D. FRANCIS, ESQ.**
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
St. Thomas, VI 00802
*For Plaintiff Elite Turnaround Specialists, Ltd.* (in Case No. SX-2021-CV-00735)

**MELODY D. WESTFALL, ESQ.**
**STEPHANIE J. KACZOR, ESQ.**
**DEVON M. CONROY, ESQ.**
Westfall Law PLLC
Christiansted, VI 00820
*For Plaintiff Advanced Overhead Crane Services, Inc.* (in Case No. SX-2021-CV-00793)

**J. DARYL DODSON, ESQ.**
**KANAAN L. WILHITE, ESQ.**
Moore, Dodson, Russel & Wilhite, P.C.
St. Thomas, V.I. 00804
*For FPR Limetree, LLC* (Case No. SX-2022-CV-00224)

**DONNIE M. KING, ESQ.**
Akerman LLP
Fort Lauderdale, FL 33301
*For Plaintiff Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals* (in Case No. SX-2022-CV-00227)

**EARNESTA L. TAYLOR, ESQ.**
**ROBERT J. KUCZYNSKI, ESQ.**
Beckstedt & Kuczynski LLP
Christiansted, VI 00820
*For Plaintiff Limetree Bay Terminals, LLC* (in Case Nos. SX-2022-CV-00233, SX-2022-CV-00234, SX-2022-CV-00235, SX-2022-CV-00236, SX-2022-CV-00237, SX-2022-CV-00238, SX-2022-CV-00239, SX-2022-CV-00242, SX-2022-CV-00244, SX-2022-CV-00271)

**CARL A. BECKSTEDT, III, ESQ.**
Beckstedt & Kuczynski LLP
Christiansted, VI 00820
*For Defendant Limetree Bay Terminals, LLC* (in Case Nos. SX-2021-CV-00530, SX-2021-CV-00597, SX-2021-CV-00598, SX-2021-CV-00711, SX-2021-CV-00735, and SX-2021-CV-00793)

**RYAN C. STUTZMAN, ESQ.**
CSA Associates, P.C.
Christiansted, V.I. 00820
*For Limetree Bay Refining, LLC* (in Case Nos. SX-2021-CV-00415, SX-2021-CV-00530, SX-2021-CV-00597, SX-2021-CV-00598, SX-2021-CV-00711). *For Defendant Limetree Bay Refining Operating, LLC*

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 3 of 26

2023 VI Super 66

(in Case No. SX-2021-CV-00510, SX-2021-CV-00513, and SX-2021-CV-00514). *For Defendant West Indies Petroleum, Ltd.* (in Case No. SX-2022-CV-00227)

**CHARLES E. LOCKWOOD, ESQ.**
**GREGG R. KRONENBERGER, ESQ.**
**SEAN P. BAILEY, ESQ.**
Dudley Newman Feuerzeig, LLP
Christiansted, VI 00820
*For Defendant Excel Construction & Maintenance VI, Inc.* (in Case No. SX-2022-CV-00227)

**DYCA C. TRICOCHE, ESQ.**
Frederiksted VI, 00841
*For Defendant West Indies Petroleum USVI, Ltd.* (in Case No. SX-2022-CV-00227)

## MEMORANDUM OPINION and ORDER

**WILLOCKS, Administrative Judge.**

¶1 **BEFORE THE COURT** is the recommendation of the Staff Master on whether complex treatment is warranted for several cases, referred to hereinafter as the Construction Lien Cases, asserting breach of contract claims and seeking foreclose of construction liens. The Staff Master reasoned that the closure of a major company, here the former Limetree Bay oil refinery, could qualify as an island-wide event if multiple lawsuits were filed. *Cf.* V.I. R. Civ. P. 92(b) ("An action or proceeding is presumptively complex if it involves . . . (3) contract, statutory, or tort claims commenced by multiple parties (whether as one action or multiple, individual actions) arising out of a natural disaster or other territory-wide or island-wide event[.]"). The Court agrees. In this instance, however, the Construction Lien Cases do not warrant complex treatment. *See* V.I. R. Civ. P. 92(a) ("A complex case is a civil action or proceeding that requires exceptional judicial management . . . .") Therefore, the Court will reject the Staff Master's recommendation, and undo the complex designation. The Construction Lien Cases may be related, however. Accordingly, the Court will refer the Construction Lien Cases to "the judicial officer assigned to the older case . . . [to] decide whether the cases are, in fact, related." Super. Ct. R. 17.1.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 4 of 26

2023 VI Super 66

# I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 The successive bankruptcy sales of the former oil refinery on the south shore of St. Croix forms the backdrop to this Memorandum Opinion.[1] Amerada Hess Corporation, now known as Hess Corporation (hereinafter "Hess"), an oil and gas company based in the continental United States, formed Hess Oil Virgin Islands Corporation (hereinafter "HOVIC") as a subsidiary to own and operate the St. Croix oil refinery. HOVIC ran the refinery for nearly three decades, from 1967 to 1998. In 1998, HOVIC entered into a joint venture with Petróleos de Venezuela, S.A. Virgin Islands and formed HOVENSA, LLC (hereinafter "HOVENSA"). HOVENSA took over the oil refinery in 1998.

¶3 Ten years later, HOVENSA began to suffer losses. In fact, between 2008 and 2011, HOVENSA suffered losses in excess of $1 billion. In 2012, HOVENSA announced that it would shut down operations. That announcement came on January 18, 2012, and meant the loss of over 2,000 jobs. HOVENSA continued as a petroleum storage operation for several years, and tried to sell the refining and storage businesses, but the sale fell apart when the Legislature of the Virgin Islands rejected the proposed agreement. HOVENSA filed for bankruptcy on September 15, 2015, and its assets were sold at a bankruptcy auction to Limetree Bay Holdings, LLC for $190 million.

¶4 Documents filed in the master case do not explain how Limetree Bay Holdings, LLC later sold (or assigned or transferred) the storage business and the refining businesses. At some point, however, Limetree Bay Refining, LLC (hereinafter "LBR") and Limetree Bay Refining Operating, LLC (hereinafter "LBRO"), possibly with other affiliated companies, acquired the refining business, while Limetree Bay Terminals, LLC (hereinafter "LBT"), also possibly with other affiliated companies, acquired the oil

---

[1] The Staff Master's recommendations detailed much of this history, which the Court borrows from but with some changes. (*See generally* Recommend. 5-8, entered Feb. 27, 2023; *see also* Recommend. 4-5, 8-9, entered Sept. 13, 2022.) Unless noted, all citations to and quotations from court documents are from documents entered or filed in the master case.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 5 of 26

2023 VI Super 66

storage business. After more than fifty years, the St. Croix oil refinery that had been run solely by one company, HOVIC and then HOVENSA, was now divided into two separate businesses: an oil refining business run by LBR and LBRO, and an oil storage business run by LBT. Additionally, the 2,000-acre industrial complex on St. Croix's southern coast, which always operated by one company, was now operated by multiple companies. This too forms part of the background to these cases.

¶5 The St. Croix refinery was more than 50 years old when it was sold at auction, and had been idled since February 2012, which rendered the task of restarting the refining side a substantial undertaking. Initially, LBR and LBRO anticipated a 2020 restart, but infrastructural issues caused a delay and increased costs. The COVID-19 pandemic exacerbated the delay with restrictions in place on workplace health and safety as well as travel, and supply chain disruptions. By January 2021, however, LBR and LBRO had the refinery up and running, and refinery operations resumed around February 1, 2021.

¶6 Operational issues surfaced no long afterward and prompted investigations by the United States Environmental Protection Agency (hereinafter "EPA"), and the Virgin Islands Department of Planning and Natural Resources, (hereinafter "DPNR"), as well as a request from the United States Attorney for the Virgin Islands to tour certain areas of the refinery. For example, in April 2021, residents in communities neighboring the refinery reported smelling a foul odor allegedly emanating from the refinery. Although investigations concluded the odor was due, at least in part, to an exposed sewage access point on government property, other irregularities were uncovered. In conjunction with the EPA and DPNR, LBR and LBRO agreed to implement a plan of remediation. Then, on May 12, 2021, a small amount of oil was dispersed downwind of the refinery, impacting many homes in neighboring areas. The next day, May 13, 2021, LBR and LBRO (together "Limetree") voluntarily ceased oil refining operations to investigate and avoid further incidences. Despite the voluntary cessation of operations, Limetree received an order from the EPA on May 14, 2021, directing it to immediately cease refinery operations for sixty

days pending operational and compliance audits. Investors and lenders began to express concern about Limetree's ability to truly restart the refinery, which restricted Limetree's access to funding needed to maintain operations. Additionally, Limetree and several of its affiliates were named as defendants in several class action lawsuits from the pollution allegedly caused by the February 1, 2021 relaunch.

¶7      Limetree was unable to acquire capital needed to maintain operations during the shutdown and restart once remedial measures were implemented. As a result, LBR announced, on June 21, 2021, that it was indefinitely suspending plans to restart the refinery, while LBRO, the principal workforce employer, notified its employees the same day that the refinery would close. Approximately two weeks later, LBR, LBRO, and several affiliates filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of Texas and Limetree's assets were sold to Port Hamilton Refining & Transportation, LLLP (hereinafter "Port Hamilton") and West Indies Petroleum, Ltd. (hereinafter "WIPL"). In other words, where one company used to own and operate the entire refinery, three companies were now in charge. LBT still owned and operated the terminal storage business, but WIPL and Port Hamilton were now in charge of refining.

¶8      Approximately a year after Limetree filed for bankruptcy, this Court, in its former administrative capacity as Presiding Judge, undertook a review of cases pending in the St. Croix District in which LBR, LBRO, or LBT were named as parties. Twenty-nine cases were identified. Seven involved personal injury or employment-related claims, such as wrongful discharge or termination. Of the other twenty-two cases, ten had been filed by contractors who performed work at the Limetree refinery but who had not been paid. The contractor-plaintiffs had recorded construction liens on land owned by LBR, LBRO, or LBT, with several liens recorded on the same parcels of land. They each sued for breach of contract and to foreclose on their construction liens. These are the cases referred to as the Construction Lien Cases. Of the remaining twelve cases, ten had been filed by LBT as forcible entry and detainer (hereinafter "FED") actions to

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 7 of 26

2023 VI Super 66

regain possession of commercial housing that LBT provided to Port Hamilton under an agreement to share services. As the Staff Master noted in his recommendation, sharing services was not an issue when HOVIC and then HOVENSA operated the refinery, but once the refinery had been divided into refining oil and storing oil, and acquired by different companies, those companies had to share certain services, e.g., internet, fire suppression, security personnel, and so forth. Housing was one of the services Port Hamilton and LBT agreed to share. The individuals occupying the cottages had, as defendants, answered the complaints and counter-designated the FED Actions as complex.[2] *See* V.I. R. Civ. P. 10(e)(1). Port Hamilton also moved to substitute itself as defendant per Section 282(a) of Title 28 of the Virgin Islands Code. Port Hamilton and the FED Defendants also alleged that the issues raised in the FED Actions were the subject of another lawsuit in the Superior Court, a case filed by LBT against Port Hamilton for debt, unjust enrichment, and breach of the shared services agreement.[3] The final case the Court reviewed was brought by FPR Limetree, LLC against LBT. It too appeared related, in the sense that it also arose out of Limetree's efforts to restart the refinery. But it concerned a letter of credit given to affiliates of LBT that LBT continued to draw on to finance the oil storage business.

¶9     After reviewing the twenty-nine cases, this Court concluded that those of a commercial nature, i.e., the Construction Lien Cases, the Letter of Credit Case, and the Shared Services Case as well as the FED Actions, could benefit from being designated complex and managed by the same judge.[4] This Court

---

[2] In fact, it was the FED defendants' counter-designations and Port Hamilton's motions, which the Clerk's Office brought to the Court's attention, that led to the Court to undertaking its review of all cases involving one or more Limetree entities.

[3] Limetree Bay Terminals, LLC changed its name to Ocean Point Terminals at some point after this master case was opened. LBT never moved to amend the caption of any of the cases it is a party to, or to substitute Ocean Point Terminals as the proper party. except in the shared services case, the lawsuit LBT filed against PHRT. The second amended complaint names the plaintiff as Limetree Bay Terminals, LLC k/n/a Ocean Point Terminals. To avoid confusion, the Court will use Ocean Point Terminals or OPT to refer the plaintiff in the shared service case. LBT will be used to refer to Limetree Bay Terminals, LLC as defendant in the other cases grouped under this master case and as plaintiff in the FED actions.

[4] The seven personal injury / employment discrimination cases were excluded as being sufficiently different from the cases of a commercial nature.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 8 of 26

2023 VI Super 66

directed the Clerk's Office to open a master case and reassign all the cases to this Court's docket. The Court also tentatively designated all twenty-two cases as complex, notwithstanding the counter-designation by several of the FED Defendants. The Court then set a deadline for the parties to address whether complex treatment was, in fact, appropriate, and directed the Staff Master to hold a hearing and, if objections were raised, to issue a recommendation on complex treatment. *Cf. In re: Auth. for the Creation & Appt. of Staff Master for the Complex Litig. Div. of the Super. Ct. of the V.I.*, Admin No. 2021-0012, 2021 V.I. Supreme LEXIS 14, *3 (V.I. Aug. 12, 2021) (authorizing the staff master to, *inter alia*, "[m]ake or recommend findings of facts and conclusions of law . . . on whether a case or cases should be designated to be complex[.]"). If the parties did not object, the Staff Master was to proceed with one or more case management conferences per Rule 93(c) of the Virgin Islands Rules of Civil Procedure.

¶10    Several parties did object. So, the Staff Master held a hearing and eventually issued several recommendations. Only the recommendation regarding complex treatment is relevant here.[5, 6] Initially, the Staff Master did not address whether treating the Construction Lien Cases was warranted because of

---

[5] The Staff Master's recommendation regarding the FED Actions is addressed in a separate Memorandum Opinion issued simultaneously with this Memorandum Opinion and Order.

[6] The first recommendation addressed the letter of credit case, the FED Actions, and the Shared Services Case. The Staff Master recommended that the Court dedesignate the letter of credit case as complex and return it to the judge to whom it was initially assigned since the case was not presumptively complex and involved one plaintiff and one defendant, both of whom objected to treating the case as complex. The Staff Master also noted a concern FPR Limetree and LBT both had raised about managing the Letter of Credit case under the same master case with other, unrelated cases, namely the potential for delay if, for example, other cases that shared more in common moved faster, as well as the potential for increased costs if counsel were expected to appear at every hearing held in the master case, even if the Letter of Credit case was not addressed. The Staff Master assured the parties—a point the Court now underscores—that cases designated complex can be managed or coordinated in many different ways. Cases managed under the same master case can be assigned to different tracks or groups and proceed under a different schedule than other cases. *Cf. In re: Asbestos, Catalyst, & Silica Toxic Dust Exposure Litig.*, 67 V.I. 544, 549 (Super. Ct. 2017). Cases can also be "treated as related for purposes of issuing case management orders, including standing orders, applicable to all cases within that group." V.I. R. Civ. P. 93(a)(1). Given the potential issues involving the bankruptcy case filed by LBR and LBRO, which was still on-going when the Court tentatively grouped the cases together, treating the Letter of Credit case as complex might have been proper, even if only to manage deadlines applicable to all cases. While the concerns FPR Limetree and LBT raised were not borne out here, the Court does want to emphasize that which cases get grouped together under a master case is not a basis for objecting to complex treatment because the parties have the right to propose a different approach. *Cf.* V.I. R. Civ. P. 93(a)(2) ("Parties must be given the opportunity to be heard by the court concerning which cases should be coordinated together under a master case and *whether a different form of coordination is more appropriate* than that proposed by the court." (emphasis added)).

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 9 of 26

2023 VI Super 66

questions about the impact of the Limetree bankruptcy. David M. Dunn of Province, LLC, had filed a status report on August 10, 2022, in his capacity as Liquidating Trustee of the LBR Liquidating Trust. Dunn stated that the claims of two Construction Lien Plaintiffs, Computer Solutions, Inc. and WESCO Distributing, Inc., were foreclosed as a result of bankruptcy proceedings, but the claims of another Construction Lien Plaintiff, Englobal US, Inc., were not. However, Englobal US's claims would be paid out of the bankruptcy estate. Based on the Trustee's representations—and because Computer Solutions, Englobal US, and WESCO Distributing failed to respond to the Trustee's report—the Staff Master recommended that all three cases be dismissed without prejudice, which this Court later adopted, over Englobal US's objection. (*See* Order 4, entered Nov. 2, 2022 ("[I]nstead of asking . . . to resolve its claims, Englobal . . . instead wants its case . . . to remain stayed while it resolves the merits through the claims adjudication process set forth in the Liquidation Plan approved by the Bankruptcy Court This Court disagrees that allowing a case that is no longer subject to a bankruptcy stay to remain pending on its docket until the parties resolve the merits in another forum is appropriate, particularly if they will only return to this Court to seek a dismissal." (citation omitted).).[7]

¶11     The Staff Master also deferred addressing whether complex treatment was warranted for the other seven Construction Lien Cases because several cases name LBT and LBR as defendants. The parties were directed to address whether the cases could proceed in light of the bankruptcy stay . The Plaintiffs— Universal Plant Services (VI), LLC (hereinafter "Universal Plant Services"), InServ Field Services USVI, LLC (hereinafter "InServ"), Great Southern Technologies, LLC, and Strategic Contract Resources, LLC—filed a response jointly with LBT to advise that LBR "should be dismissed without prejudice" and

---

[7] In the same Order, the Court reviewed and agreed with the Staff Master's recommendation that the Letter of Credit Case was not complex, and returned it to the Clerk's Office for reassignment to the judge initially assigned. FPR Limetree and LBT later stipulated, on June 30, 2023, to a dismissal without prejudice.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 10 of 26

2023 VI Super 66

also "that the bankruptcy proceedings do not affect the plaintiff's claims against [LBT] . . . ." (Jt. Rpt to Ct. 2, filed Sept. 16, 2022.)

¶12    The Staff Master did address treating the FED Actions as complex cases and concluded that complex treatment was not warranted. As noted, this recommendation is addressed in a separate Memorandum Opinion. Regarding the Shared Services Case, however, the Staff Master agreed with Port Hamilton and the FED Defendants that "the FED actions and the Shared Services case are related." (Recommend. 10, entered Sept. 13, 2022.) And, since Ocean Point and Port Hamilton had agreed during oral argument "that the outcome should be the same for the FED [A]ctions and the Shared Services [C]ase with respect to complex treatment[,]" *id.* at 7 n.4, the Staff Master did not conduct a separate analysis on whether Shared Services Case warranted complex treatment. Not at first, that is.

¶13    Port Hamilton and the FED Defendants filed an objection to the Staff Master's recommendation, to which LBT responded. The Court later scheduled oral argument on the objections. The Court also noted that the Staff Master had deferred issuing addressing whether the remaining Construction Lien Cases should remain complex, pending briefing by the parties. No recommendation issued after that briefing came in. To reduce additional delay, the Court directed the Staff Master to address complex treatment for the remaining Construction Lien Cases and instructed the parties, in lieu of filing responses under Rule 53(f) of the Virgin Islands Rules of Civil Procedure, to come prepared to move to adopt or to modify, or raise objections to, the forthcoming recommendation in person.[8] The Court also directed the parties to

---

[8] The Court acknowledges that it delayed acting on the first recommendation and the Staff Master later advised, informally, that he did not issue a third recommendation because he was awaiting further action by the Court on the first recommendation. While the Court appreciates the Staff Master's concerns, the staff master has an independent obligation "[t]o file all orders, recommendations and reports *promptly* with the clerk's office . . . ." *In re: Auth. for Creation & App't of Staff Master for Complex Litig. Div.*, 2021 V.I. Supreme LEXIS 14 at *4 (emphasis added). Delaying issuance of a later recommendation because an earlier recommendation remains pending before the judge could result in further delay, which is contrary to the reasons the Supreme Court of the Virgin Islands established the position. *See id.* at *1-2. This is not to say the staff master lacks the discretion to manage the sequence in which he or she acts on matters within her or his scope of authority. *Contra Stanley v. V.I. Bureau of Corr.*, 2022 VI Super 77, ¶¶ 19-20 (discussing discretion of masters, including staff master). But in general, the staff master should act promptly, even if it may mean the judge has multiple recommendations to act on, because

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 11 of 26

2023 VI Super 66

provide an update if the posture of any of the cases had changed and might have an impact on the hearing, for example, "if the FED Actions have become moot because one or more tenants have vacated the premises." (Order 3, entered Feb. 14, 2023.)

¶14   The Staff Master issued a third recommendation shortly thereafter, which amended the first recommendation in part because of subsequent changes in the Shared Services Case. The Staff Master concluded that the Construction Lien Cases could qualify as presumptively complex because involved contract and statutory claims commenced by multiple people in multiple actions arising out of an island-wide event, namely the closure of the Limetree refinery. Additionally, because LBT had amended the complaint in the Shared Services Case to add a request to foreclose on construction liens recorded on property now owned by Port Hamilton, the Staff Master reasoned that the Shared Services Case should be treated as complex and managed with the other Construction Lien Cases. After hearing oral argument from the parties, including objections to the third recommendation, the Court took the matter under advisement.

## II.   DISCUSSION

¶15   Two issues are raised here. First, whether to adopt the Staff Master's recommendation and overrule LBT's objection to treating the Construction Lien Cases and the Shared Services Case as complex. Notably, none of the Plaintiffs in the Construction Lien Cases objected to complex treatment. Only LBT, as Defendant in the Construction Lien Cases and as Plaintiff in the Shared Services Case, objected. Second, if complex treatment is not warranted, should the Construction Lien Cases, including the Shared

---

the parties benefit from a neutral assessment of their positions and may agree with that assessment and move to adopt the recommendation, to withdraw their earlier objections, or even agree to settle. If no recommendation has issued, no one has anything to act on. In this instance, however, any error is harmless because no one objected, requested that the Staff Master to issue a recommendation, or sought relief from the Judge.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 12 of 26

2023 VI Super 66

Services Case, be treated as related cases under Superior Court Rule 17.1 and presided over by the same judge. Each is addressed below.

### A. Construction Lien Cases

¶16    The Staff Master concluded that the Construction Lien Cases qualify as presumptively complex as "'actions for breach of contract and construction lien foreclosure . . . 'commenced by multiple parties in multiple, individual actions' . . . [that] arose from the Limetree refinery shutdown." (Recommend. 12-13, entered Feb. 27, 2023 (ellipsis omitted) (quoting V.I. R. Civ. P. 92(b)(3)).) The Staff Master observed that the phrases "island-wide" and "territory-wide" have not been interpreted yet and then looked to their plain meaning. *See id.* at 9 ("Here, the meaning of the terms 'territory-wide' or 'island-wide' are relatively straight-forward. They refer to events that occur throughout the Virgin Islands or only on one island, respectively."). Events like earthquakes or hurricanes, which likely would have island-wide or territory-wide impact, had to be excluded, the Staff Master reasoned, because "natural disasters" are already provided for. Since rules, like statutes, "cannot be construed to render phrases superfluous[,]" *id.* (citing *Corraspe v. People*, 53 V.I. 470, 482 (2010), island-wide or territory-wide must mean something different.

¶17    The Staff Master then looked to other cases that had a territory-wide or island-wide impact, like *In re: Tutu Wells Contamination Litigation*, 29 V.I. 41 (D.V.I. 1993), and *St. Croix, Ltd. v. Shell Oil Company*, 50 V.I. 468 (2014). (*See Recommend.* at 10.) The Staff Master reasoned that *Tutu Wells* could satisfy the "island-wide" category, given the extent of the damage the gasoline caused when it leached into wells on St. Thomas, and that *St. Croix, Ltd.* could qualify as a territory-wide category, given the number of consumers who alleged plumbing failures. *See id.* But each event would be covered now by a different subdivision of the rule, the Staff Master reasoned. If the *Tutu Wells* litigation had occurred now, it would qualify as presumptively complex under Rule 92(b)(1), which speaks to environment, toxic, and mass tort claims. Similarly, if a case like *St. Croix, Ltd.* was filed now, it could qualify as presumptively

complex under by Rule 92(b)(2), which speaks to construction, manufacturing, and design defect claims involving multiple parties, structures, or products like.

¶18    Having concluded that "island-wide" and "territory-wide" could not be "construed as a synonym for another type of incident," (Recomm. 10), the Staff Master found some "guidance" from the rule itself. "[T]he word 'other' occurs immediately after 'natural disaster' and before 'territory-wide or island-wide event.' Thus, an island-wide event must have an impact like a hurricane," the Staff Master reasoned, and result in "multiple parties file suit because of the event." *Id.* "One example could be an island-wide power outage from which multiple contract, statutory, or tort claims arise." *Id.* (citing *In re: Winter Storm Uri Litig.*, No. 21-0313, 2021 Tex. LEXIS 676 (Tex. MDL Panel July 7, 2021). "Another example might be a territory-wide government shutdown." *Id.* at 10-11 (citing *In re: Gov't Shutdown Litig.*, No. A-11-1170, 2011 Minn. LEXIS 393 (Minn. June 30, 2011); *see also id.* at 11 ("Or insurance coverage claims arising from an island-wide or territory-wide shutdown due to a pandemic." (citing *In re: Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021)). Drawing from these examples, the Staff Master concluded that the failure of the Limetree refinery was an island-wide event because it caused multiple lawsuits to be filed. *See id.*

¶19    In reaching this conclusion, the Staff Master stressed that "the breach of contract and construction lien claims did not arise because Limetree filed for bankruptcy. Most of the construction lien notices had already been filed with the Recorder of Deeds before Limetree filed for bankruptcy." *Id.*; *see also id.* at 12 ("Again, Limetree filing for bankruptcy is not the island-wide event here."). Instead, "Limetree's inability to restart the refinery is [the island-wide event], because that is what caused Limetree to be unable to pay its contractors, which in turn led to the Construction Lien Cases being filed." *Id.* "All the Construction Lien [C]ases and all but one construction lien notice were filed after the May 12th release, the May 13th announcement, and the May 14th cessation order. It is not unreasonable[,]" the Staff Master surmised,

that "the writing was on the wall and the contractors knew what may be coming next." *Id.* In fact,

"immediately following the events of May 12th through 14th, eleven companies filed suit against Limetree

or [LBT] (or both)" and further, LBT "was not named as a defendant . . . until after Limetree filed for

bankruptcy." *Id.*

¶20    The Staff Master is correct. This is a matter of first impression. No court has construed the phrase

"island-wide event" or "territory-wide event" as used in Rule 92(b)(3) of the Virgin Islands Rules of Civil

Procedure. During oral argument, LBT explained that its objection to the Shared Services Case continuing

as complex was not a strong objection. But LBT disagreed with the Staff Master's conclusion that the

closure of the Limetree refinery qualified as an island-wide event. To be clear, however, the Staff Master

did not conclude that the closure itself was the island-wide event. *See id.* at 13. ("Admittedly, one could

argue that similar events occur whenever any company goes out of business."). Instead, as the Staff Master

explained, a point this Court echoed from the bench during oral argument, "Limetree, like HOVENSA,

was not an ordinary business. 'HOVENSA was the largest employer on the island,' and 'the HOVENSA

refinery was one of the world's largest oil refineries.' Limetree sought to step into HOVENSA's shoes

and 'the expense of restarting the Refinery was enormous.'" *Id.* (brackets, footnote, and citations omitted).

¶21    LBT cited a hurricane, an epidemic or a pandemic, or even a riot as events that might fit better as

events with island-wide or territory-wide impact. The Staff Master's analysis is sound, however, that

"island-wide" or "territory-wide" cannot be synonymous with "natural disaster" because it would render

portions of Rule 92 superfluous. *See Corraspe*, 53 V.I. at 428. The other examples LBT offered are just

that – examples of other types of events that could also have island-wide or territory-wide impact,

assuming they resulted in "contract, statutory, or tort claims [being] commenced by multiple parties

(whether as one action or multiple, individual actions) . . . ." V.I. R. Civ. P. 92(b)(3). There is no limit or

restriction in the rule on the number or type of events that might have an island-wide or territory-wide

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 15 of 26

2023 VI Super 66

impact and result in the filing of multiple lawsuits. Island-wide events that do not impact the Superior Court have no relevance here. The COVID-19 pandemic certainly were events that had territory-wide and island-wide impact. But unlike in other parts of the country, the Virgin Islands courts were not inundated with pandemic-related lawsuits. *Cf. Does v. Hochul*, 632 F. Supp. 3d 120, 145 n.28 (E.D.N.Y. 2022) ("The number of lawsuits filed in this District based on COVID-19 deaths in nursing homes demonstrates that this is more than just a theoretical possibility." (collecting cases)); *see also Wirtz v. Medina City Sch. Dist. Bd. of Educ.*, No. 1:21-cv-1730, 2022 U.S. Dist. LEXIS 121230, *2 n.3 (N.D. Ohio July 8, 2022) ("This action is one of numerous lawsuits filed in this and other districts by 'pro se' parents challenging mask requirements implemented in their children's school districts in response to COVID-19." (collecting cases)). Island-wide or territory-wide events must not only have an island-wide or territory-wide impact. They must also concern "contract, statutory, or tort claims commenced by multiple parties (whether as one action or multiple, individual actions) . . . ." V.I. R. Civ. P. 92(b)(3). Was the shutdown of the Limetree refinery and the multiple lawsuits filed thereafter, an island-wide event?

¶22    Having reviewed the Staff Master's recommendation and considered the arguments of counsel, the Court agrees that an island-wide or a territory-wide event cannot be synonymous with another presumptively-complex category of cases. *Cf. Corraspe*, 53 V.I. at 428. The Court also agrees that an island-wide or a territory-wide event must generate litigation of similar quantity or complexity as that of a natural disaster "because the word 'other' occurs immediately after 'natural disaster' and before 'territory-wide or island-wide event.'" (Recommend. 10 (quoting V.I. R. Civ. P. 92(b)(3)).) *Cf. Am. States Ins. Co. v. Ins. Co. of the Pa.*, 173 F. Supp. 3d 982, 984 (E.D. Cal. 2016) (fire) ("Sparks caused by Howell's bulldozers allegedly caused the conflagration, which became known as the Moonlight Fire. Multiple lawsuits were filed against both Sierra and Howell as a result of the fire . . . ."); *Home Indem. Co. v. Anders*, 459 So. 2d 836, 839 (Ala. 1984) (flooding) ("In 1980 and 1981, several large storms passed over

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 16 of 26

2023 VI Super 66

the City of Mobile (City). Widespread flooding caused extensive property damage. Hundreds of lawsuits were filed against the City. Most of the suits alleged that the City had been negligent in the design, construction, and maintenance of its sewer and drainage system."); *see also, e.g., U.S. Fire Ins. Co. v. Ganz*, 623 F. Supp. 337, 338 (N.D. Cal. 1985) ("This action arises out of the alleged commingling of cremated remains by Elkcam and/or defendant B. Jack Elkin . . . . Beginning in June, 1984, thousands of lawsuits were filed in state court . . . ."). Clearly, the closure of a major company, industry, or employer can have an island-wide or even a territory-wide impact on the courts that warrants complex treatment if multiple cases are filed as result. *Cf. Castillo v. St. Croix Basic Servs., Inc.*, 72 V.I. 528, 535 (Super. Ct. 2020) (complex case commenced by multiple plaintiffs as a result of refinery shutdown). The Court does not agree, however, that the Limetree closure generated sufficient cases or cases complex enough to warrant complex treatment. Ergo, the Construction Lien Cases are not presumptively complex.

¶23    The overarching concern in all complex cases is "to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel" with respect to "a civil action or proceeding that requires exceptional judicial management[.]" V.I. R. Civ. P. 92(a). As the Staff Master observed, "[t]he potential for inconsistent rulings and the drain on judicial resources" when "multiple judges hav[e] to familiarize themselves with the same events that preceded the filing of the[] cases are among the reasons why the Complex Litigation Division was established." (Recommend. 15.) Again, the Court agrees that the closure of a major business that generates significant revenue, and results in the unemployment of thousands of workers, could qualify as an event of island-wide or even territory-wide impact that warrants treating as complex the multiple cases that are filed as a result of the closure. But the Limetree closure did not have the impact on the Superior Court like the hundreds of insurance-related lawsuits that were filed after Hurricane Maria, for example, or even the "complex, multi-layered litigation" generated by the *Tutu Wells*

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 17 of 26

2023 VI Super 66

contamination cases. *Cf. In re: Tutu Wells Contamination Litig.*, 29 V.I. at 51 ("This matter, which began as an environmental tort case between Plaintiffs and Defendants, has grown into a complex, multi-layered litigation with Third and Fourth Amended Complaints, counterclaims, cross-claims, third party claims, and fourth-party claims. Over two dozen parties, and an equally large number of counsel, are now involved."). For this reason, the Court concludes that the closure of the Limetree refinery was not an island-wide event and, therefore, any cases filed as a result of the closure are not presumptively complex.

## B. Treatment as Complex or Related Cases

¶24     Although this Court believes that the Limetree closure was not an island-wide event under Rule 92(b)(3), it does not automatically mean that the Construction Lien Cases cannot be treated as complex. "[T]he inquiry does not end with the presumptively-complex categories because 'a case can be deemed complex if it involves a large number of parties, or when coordinated discovery across multiple cases would be advantageous.'" *Dutch W. Indies Trading Co. v. Addington*, 76 V.I. 272, 279 (Super. Ct. 2022) (quoting *Highland Credit Opportunities CDO, Ltd. v. Evans-Freke*, 74 V.I. 275, 281 (Super. Ct. 2021)). Not long after the oil discharge, Limetree's voluntary cessation, and the EPA's closure order, eleven Construction Lien Cases were filed. The Staff Master believed that assigning these cases at random among the general jurisdiction judges would be inefficient as they share common questions of law and fact, seek similar relief, and might result in inconsistent or contrary outcomes if one case, or one judge, proceeds faster than the others. Avoiding inconsistent outcomes and waste of judicial resources is a factor to consider in deciding whether complex treatment is warranted. *Cf. Sixteen Plus Corp. v. Yousef*, 72 V.I. 610, 628 (Super. Ct. 2020). But it is the primary factor to consider when deciding whether cases are related. *See* Super. Ct. R. 17.1

¶25     On the one side are InServ, Great Southern Technologies, Universal Plant Services, and Advanced Overhead Crane Services as Construction Lien Plaintiffs, as well as WIPL and Port Hamilton as

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 18 of 26

2023 VI Super 66

Defendants in the Shared Services Case, agreeing that the Construction Lien Cases and the Shared Services Case should be treated as complex.[9] Port Hamilton further argued that, if the cases do not continue as complex cases, they should at least be deemed related. On the other side is LBT as Defendant in the Construction Lien Cases and Plaintiff in the Shared Services Case, arguing that none of the cases should be coordinated with each other, whether as complex cases or related cases. Excel Construction & Maintenance VI, Inc. (hereinafter "Excel"), a Defendant added to the Shared Services Case after LBT was permitted to amend its complaint, joined LBT in opposing complex treatment and deeming the cases related.

¶26    Determining whether cases should be deemed related or whether they instead warrant complex treatment presents similar concerns. Related cases, like complex cases, involve multiple parties and often involve similar, if not the identical, claims. *Compare* Super. Ct. R. 17.1 ("Civil cases are deemed related when two or more lawsuits . . . involve the same or similar claim(s) . . . that arises out of the same event, transaction, or contract."), *with* V.I. R. Civ. P. 92(c) ("The determination whether a case is complex [includes] . . . (1) whether the action involves a large number of parties; many claims with common, recurrent issues of law or fact . . . or a high degree of commonality of injury or damages among the claimants . . . ."). The Staff Master raised valid concerns since the Judiciary has recognized that "assigning related cases to different judicial officers is inefficient, wasteful of scarce judicial resources, and may result in inconsistent determinations . . . ." *In re: Procedure for the Assignment & Reassignment of Related Cases & Proceedings*, Case No. SX-2020-MC-00087, 2020 V.I. LEXIS 75, *1 (V.I. Super. Ct. Dec. 3, 2020), *abrogated on other grounds by In re: Amendments to the V.I. Rules of Crim. Pro., V.I.*

---

[9] WIPL did not appear at oral argument on March 22, 2023. Advanced Overhead Crane Services did appear but did not take a position. Further, neither party filed an objection in response to the Court's initial order opening this master case and, therefore, are deemed to have agreed to complex treatment. (*See* Order 8, entered July 27, 2022 ("Any party who fails to serve and file a notice will be deemed to have consented to and agreed with the Court's initial assessment that the cases listed on the attached Roster of Cases should be treated as complex.").

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 19 of 26

2023 VI Super 66

*Rules of Evid., and Rules of Super. Ct.*, Prom. No. 2022-001, 2022 V.I. Supreme LEXIS 8, *9-11 (V.I. Mar. 16, 2022) (adopting Super. Ct. R. 17.1).

¶27    Until recently, there was no formal mechanism, short of a motion for consolidation, to assign related cases to the same judge. *Accord Sixteen Plus Corp.*, 72 V.I. at 628 ("Unfortunately, 'the Virgin Islands judiciary has not promulgated a rule mandating that counsel identify related cases at the trial court level.'" (quoting *Abraham v. St. Croix Renaissance Grp, LLLP*, 70 V.I. 84, 105 (Super. Ct. 2019)). However, once Superior Court Rule 17.1 was promulgated, parties and self-represented litigants are now obligated to notify the court if "two or more lawsuits (1) concern the same property (real or personal), or (2) involve the same or similar claim(s) between one or more of the same parties (or their successors-in-interest) that arises out of the same event, transaction, or contract." Super. Ct. R. 17.1. So, the last issue to address here is whether the Construction Lien Cases and the Shared Services Case warrant complex treatment, even if they are not presumptively complex, or whether the cases be deemed related to each other so that one judge will preside over them all.

¶28    The Court initial review of all cases involving LBR, LBT, or LBRO revealed ten cases alleging breach of contract and requests to foreclose on construction liens. LBT later amended its complaint in the Shared Services Case to include a request to foreclose on construction liens, which brought the total number of construction lien cases to eleven. Since then, seven cases were dismissed, either by the Court or by stipulation of the parties. Thus, even with the Shared Services Case included, the total number of Construction Lien Cases is only four. Complex treatment is not decided based solely on the number of cases. "[A] single case, unrelated to any other and regardless of the number of parties, can . . . be complex if it 'requires exceptional judicial management.'" *Evans-Freke*, 74 V.I. at 281 (quoting *Sixteen Plus Corp.*, 72 V.I. at 627). These four cases do not require exceptional judicial management. But they may warrant coordination as related cases.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 20 of 26

2023 VI Super 66

¶29     The Staff Master's findings, which the parties did not challenged, detailed the legal and factual

overlap among the cases:

> [LBT] amended its complaint in the Shared Services case to add WIPL and Excel as
> defendants and to add a construction lien claim against Port Hamilton . . . [and] seeks to
> foreclose its construction liens on Refinery Plot No. 1-AB (6.8818 acres), Remainder of
> Refinery Plot No. 1 (114.9456 acres approx.), Remainder of Refinery Plot No. 2 (26.5670
> acres), and Remainder of Refinery Plot No. 3 (184.4305 acres). InServ . . . . ,
> AltairStrickland . . . , and Universal Plant Services . . . sued to foreclose on the *same*
> *parcels* . . . . Thus, the relief sought in the Shared Services [C]ase now overlaps with the
> relief sought in the *InServ Field Services* case and, prior to their dismissal, with the
> *AltairStrickland* and *Universal Plant Services* cases.
>
> InServ also seeks to foreclose on additional parcels, including Terminal Plot No. 4
> (386.444 acres) and Terminal Plot No. 5 (33.773 acres), the same two parcels that
> Advanced Overhead Crane Services . . . seeks to foreclose on. Thus, some of the relief
> sought in the *InServ Field Services* case overlaps with the *Advance Overhead Crane* case.
> The same is true of Great Southern Technologies . . .who seeks to foreclose on, among
> others, Refinery Plot No. 6 (26.7027 acres) and Refinery Plot No. 7 (19.857 acres), both of
> Estate Limetree Bay, Reclaimed Land, as well as Plot No. 12, Estate Limetree Bay,
> Reclaimed Land (5.8240 acres) – three of the parcels that InServ seeks to foreclose on.
>
>     . . . .
>
> It is correct that the contracts at issue in the Construction Lien Cases are different
> as are the circumstances which led to the breach of those contracts. It is also correct that
> some plaintiffs filed liens on properties which the other plaintiffs did not. But in the case
> of InServ, for example, the majority of liens it filed are at issue in other Construction Lien
> Cases. Additionally, something [LBT] . . . did not note in its response [to the Court's initial
> Order opening the master case], none of the Construction Lien plaintiffs filed notices in
> their cases of compliance with section 269 of title 28 of the Virgin Islands Code, which
> requires recording a notice of commencement of action. *See* 28 V.I.C. § 269(a) ("A
> claimant, after instituting action to enforce a lien, shall record a notice of the
> commencement of action in the office in which the notice of lien was recorded."); *id.* §
> 269(b) ("Only from the time of recording such notice shall a purchaser or encumbrancer of
> the property affected thereby be deemed to have constructive notice of the pendency of the
> action . . . ."). Universal Plant Services . . . recorded a notice of commencement of action,
> at least with respect to the Estate Blessing properties, and later released its claims on
> November 4, 2022. If the other Construction Lien plaintiffs recorded notice of
> commencement . . . that is not reflected on the Recorder of Deeds' website. In *Chase*
> *Manhattan Bank, N.A. v. James E. Ruan, Inc.*, 18 V.I. 380, 383 (D.V.I. 1981), the District
> Court of the Virgin Islands construed this statute as allowing construction lien holders to
> lose priority if they did not record notice of commencement of action. Thus, insofar as the
> foreclosure claims are concerned, coordination certainly would not "unreasonably delay

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 21 of 26

2023 VI Super 66

the case, increase expense, complicate the action, or unfairly prejudice a party." V.I. R. Civ. P. 92(c)(2).

Finally, the Recorder of Deeds' website (Doc. # 2022001204) shows that as of January 24, 2022 . . . [LBR had] conveyed to Port Hamilton by quitclaim deed Refinery Plot No. 1-AB and Remainder of Refinery Plot Nos. 1, 2, and 3 – four of the properties at issue in these cases. InServ alleges that [LBR or LBT] . . . owns these same parcels. But [LBT] . . . amended its complaint in the Shared Services [C]ase to assert a construction lien claim on the same parcels against Port Hamilton. Thus . . . the remaining defendant in three Construction Lien Cases[] may no longer be the record owner . . . . And if the Construction Lien plaintiffs' failure to record notices of commencement of action impacts their claims vis-à-vis the January 24, 2022 conveyance, resolving these cases on a case-by-cases basis might be unnecessarily complicated and would raise the risk of increased costs, inefficient decision making, further burdens on the Superior Court. *Contra* V.I. R. Civ. P. 92(a). (Third Recommend. 14 -17 (brackets and citations omitted).)

The overlap between the cases does give reason to pause.

¶30     This Court, in its former administrative capacity as Presiding Judge, issued a Standing Order on December 3, 2020, to adopt what later became Superior Court Rule 17.1. *See generally In re: Related Cases*, 2020 V.I. LEXIS 75 at *2-4. The Standing Order remained in effect until it was abrogated by the promulgation of Superior Court Rule 17.1, which took effect on June 1, 2022. *See In re: Amendments*, 2022 V.I. Supreme LEXIS 8 at *11. "Civil cases are deemed related when two or more lawsuits (1) concern the same property (real or personal), or (2) involve the same or similar claim(s) between one or more of the same parties (or their successors-in-interest) that arises out of the same event, transaction, or contract." Super. Ct. R. 17.1. The Staff Master's analysis shows that the same properties are at issue in multiple cases. Each case does not involve the same parcels of land. But on the whole, one or more parcels of land are at issue in more than one case. Similarly, the same claims (breach of contract and foreclosure of construction lien) are at issue in each Construction Lien Case, and all of the cases arise out of the same event: the closure of the refinery. Here too, the Staff Master's observations regarding the timing of the liens being recorded and the cases being filed is apt. The writing was on the wall. Eleven cases seeking to

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 22 of 26

2023 VI Super 66

foreclose construction liens on property owned by LBT, LBR, or LBRO were filed within a span of four months.

¶31    The Complex Litigation Division exists in part to "avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." V.I. R. Civ. P. 92(a). The parties have a right to object to complex treatment. *Cf.* V.I. R. Civ. P. 92(d). The Court can overrule their objections, but the Court cannot force them to consent. In this instance, the Court does not believe that complex treatment is warranted. As Excel pointed out, these cases are simple breach of contract claims. The Construction Lien Plaintiffs performed work for Limetree at the refinery and were not paid. They recorded liens on properties owned by LBR, LBRO, or LBT. Some of those properties may not be owned, in whole or in part, by Port Hamilton or WIPL, following their acquisition of Limetree's assets through the bankruptcy case. The Court agrees with Excel and LBT that these cases are not particularly complicated, at least with respect to the merits. Whether the construction liens can be foreclosed on – given the overlap between the cases and the issues the Staff Master spotted – that is another matter, and one the parties may have to sort out on a case-by-case basis. (*See* Third Recommend. at 17.)

¶32    The cases are related, however, and the Court is astonished that none of the parties filed a notice of related cases. The Construction Lien Cases were filed between May and October 2021. This Court's Standing Order went into effect on December 3, 2020. Attorney were required to "immediately notify the Clerk's Office, in writing, anytime they become aware of the existence of a related case." *In re: Related Cases*, 2020 V.I. LEXIS 75 at *3; *accord* Super. Ct. R. 17.1. Even after the Standing Order was promulgated as Superior Court Rule 17.1, no one complied, including the parties to the Shared Services Case once leave to file an amended complaint was granted six months after Superior Court Rule 17.1 took effect. In fact, if this Court had not opened this master case, these cases likely would have proceeded

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 23 of 26

2023 VI Super 66

separately, contrary to the recognition that "'assigning related cases to the same judge . . . [is] more efficient because the judge has knowledge of both cases and their respective procedural histories and can issue any other orders short of formal consolidation to avoid unnecessary cost or delay . . . .'" *In re: Related Cases*, 2020 V.I. LEXIS 75 at \*1-2 (brackets omitted) (quoting *In re: Kelvin Manbodh Asbestos Litig. Series*, 69 V.I. 394, 422 (Super. Ct. 2018)).

¶33     The Staff Master, court rules, and statues all point in the same direction, proceeding with each case separately might not be wise. *Cf.* Super. Ct. R. 17.1; V.I. R. Civ. P. 92(c)(1); 28 V.I.C. § 532. This Court does not believe that complex treatment is warranted. Deeming the cases related may be appropriate, however. But the question at this juncture is what the consequence should be when a notice of related case is not filed. Filing a notice of related cases is not optional. *See* Super. Ct. R. 17.1. Rather than impose sanctions, or deem the cases related, the Court believes the best option is to invoke the rule *sua sponte*. Allowing the parties to circumvent the rule would only work a disservice on the Superior Court. "First, it is in the best interest of the court to avoid piecemeal litigation which results in the waste of judicial and individual resources." *Thaxton v. United States*, 11 Cl. Ct. 181, 183 (1986). "The court may attend more swiftly to other pending matters if related cases are decided by a single judge. Wasting the court's time and resources is unfair both to the court and to the other litigants whose cases are held in abeyance." *Id.* "Second, the rule seeks to minimize the occurrence of inconsistent decisions. It also seeks to guard against forum shopping, which is repugnant to the integrity of the court and those persons seeking legal redress." *Id.* "The failure to file a Notice of Related Case[] allows a litigant to manipulate the court's docket and is an improper attempt to increase the chances of success." *Id.* This Court agrees.

¶34     "The related case rule enhances the administration of the court by avoiding piecemeal litigation and minimizing the occurrence of inconsistent decisions. Hence, an attorney who violates . . . the rule . . . impedes the administration of the court." *Bailey v. Dart Container Corp.*, 980 F. Supp. 584, 590 n.11

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 24 of 26

2023 VI Super 66

(D. Mass. 1997) (citation omitted). Sanctions can be imposed for failure to comply. *See id.* at 590. While this Court is astonished, frankly, that none of the parties complied with the Standing Order or with Superior Court Rule 17.1 once it took effect, and further amazed that LBT and Excel continue to represent that that Superior Court Rule 17.1 does not apply here, rather than impose sanctions, the Court believes that invoking the rule is more appropriate. **Rule 17.1** directs that "[o]nce a notification of related case is filed, the Clerk's Office shall assign (or reassign) the newer case[s] to the same judicial officer assigned to the older case." Of the four remaining Construction Lien Cases, the oldest case is the *InServ Field Services* case, which was assigned initially to the Honorable Douglas A. Brady. Judge Brady is "the judicial office" who must ultimately "decide whether the cases are, in fact, related." Super. Ct. R. 17.1 ("In the event of an objection, the judicial officer assigned to the older case shall decide whether the cases are, in fact, related."). This Court cannot determine whether the cases are related. Instead, the Court will direct that the Clerk's Office reassign the Construction Lien Cases and the Shared Services Case to Judge Brady for that determination.

## III. CONCLUSION

¶35 For the reasons given above, the Court concludes that the closure of a major company can constitute an island-wide event presumptively warranting complex treatment of the lawsuits filed as a result of the closure. But the closure of the Limetree refinery did not rise to that level here. As a result, the Construction Lien Cases and the Shared Services Case are not presumptively complex. The Court also does not believe that these cases require exceptional judicial management. Nevertheless, and even though the Staff Master did not address it in detail, the Court does believe that the Construction Lien Cases and the Shared Services Case may be related. However, the judicial officer who must decide that issue is the judge initially assigned to the oldest case. For these reason, the Court will de-designate the Construction Lien Cases as complex, strike the complex counter-designation from Port Hamilton's answer in the Shared

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 25 of 26

2023 VI Super 66

Services Case, and return the cases to the Clerk's Office for reassignment in accordance with Superior Court Rule 17.1.

Accordingly, for the reasons given above, it is hereby

**ORDERED** that the following cases are **DETERMINED TO NOT BE COMPLEX**, and the tentative complex designation ordered by this Court on July 27, 2022, is **VACATED** as to *InServ Field Services USVI, LLC v. Limetree Bay Refining, LLC, et al.*, Case No. SX-2021-CV-00597; *Great Southern Technologies, LLC v. Limetree Bay Refining, LLC, et al.*, Case No. SX-2021-CV-00598; and *Advanced Overhead Crane Services, Inc. v. Limetree Bay Terminals, LLC, et al.*, Case No. SX-2021-CV-00793. It is further

**ORDERED** that the complex counter-designation by Defendant Port Hamilton Refining & Transportation, LLLP in its Answer filed on July 28, 2022, Answer to Amended Complaint filed on February 18, 2022, and Answer to Second Amended Complaint filed on March 31, 2023 are **STRICKEN**, and *Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals v. Port Hamilton Refining & Transportation, LLLP, et al.*, Case No. SX-2022-CV-00227, is **DETERMINED TO NOT BE COMPLEX**. It is further

**ORDERED** that the Clerk's Office shall **REMOVE** the following cases this master case and, pursuant to Superior Court Rule 17.1, **REASSIGN** them to the Honorable Douglas A. Brady for a determination whether the cases are related: *InServ Field Services USVI, LLC v. Limetree Bay Refining, LLC, et al.*, Case No. SX-2021-CV-00597; *Great Southern Technologies, LLC v. Limetree Bay Refining, LLC, et al.*, Case No. SX-2021-CV-00598; *Advanced Overhead Crane Services, Inc. v. Limetree Bay Terminals, LLC, et al.*, Case No. SX-2021-CV-00793; and *Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals v. Port Hamilton Refining & Transportation, LLLP, et al.*, Case No. SX-2022-CV-00227. It is further

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion and Order**
Page 26 of 26

2023 VI Super 66

**ORDERED** that the Clerk's Office **SHALL SERVE** a copy of this Memorandum Opinion and

Order on counsel of record, forward a copy to the Clerk of the Court as well as the Honorable Douglas A.

Brady, and then **CLOSE** this master case.

**DONE and SO ORDERED this** 2nd **day of November, 2023**

_____
**HAROLD W.L. WILLOCKS**
Administrative Judge of the Superior Court

**ATTEST**:
Tamara Charles
Clerk of the Court

By: _____
Court Clerk

Dated: _____11/2/2023_____